Dennis J. Wickham, Esq. (#89835)
SELTZER CAPLAN MCMAHON VITEK
A Law Corporation
2100 Symphony Towers, 750 B Street
San Diego, California 92101-8177
Telephone: (619) 685-3003
Email: wickham@scmv.com

Attorneys for City National Bank

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF CALIFORNIA

In re

LIVE OAK HOLDING, LLC,
                    Debtor.

) CASE NO. 13-11672-LT11
)
) Chapter 11
)
) DECLARATION OF MATTHEW SEMMER
) IN SUPPORT OF MOTION TO EXCUSE
) TURNOVER BY STATE COURT RECEIVER
) AND FOR THE APPOINTMENT OF A
) CHAPTER 11 TRUSTEE
)
) Date:   January 16, 2014
) Time:
) Ctrm:   3
) Honorable Laura Taylor
)
)

I, Matthew R. Semmer, declare:

1. I am the Receiver appointed by the San Diego Superior Court in Case No. 37-2012-00065199-CU-MC-EC, styled as *City National Bank v. Live Oak Holding, LLC et al.* (the "Receivership Action").

2. In addition to serving as a Receiver, I am a practicing attorney and a member of the State Bar of California. I am familiar with the procedures and requirements involved in acting as a Court-appointed Receiver. I have extensive experience in structuring, negotiating, and managing receiverships and other workout efforts involving residential, retail, office, industrial, and hospitality properties.

3. I was appointed Receiver on April 27, 2012, for Live Oak Holding, LLC (the "Debtor") pursuant to that certain "Order Appointing Receiver After Hearing and Preliminary Injunction-Rents, Issues, and Profits" issued by the Honorable Judge Joel R. Wohlfeil (with the

No. 13-13-11672-LT11

DECLARATION OF MATTHEW SEMMER SUPPORT OF MOTION TO EXCUSE TURNOVER BY STATE COURT
RECEIVER AND FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

power to possess, manage and collect all rent and income from the real property defined below as the Property), and have served as Receiver for approximately 18 months. The initial order appointing me for the subject property located at 37820 Old Highway 80, Boulevard, California 91905 commonly known as Live Oak Springs Resort (the "Property") is attached as an Exhibit to my initial Receiver's Report filed in the Receivership Action attached hereto as **Exhibit "1."**

4. On May 23, 2012, I visited the Property and met with Mr. Nazar E. Najor ("Najor"), the owner and managing member of the Debtor. I conducted an initial site inspection of the Property and toured the common areas. The Property includes a resort comprised of small cabin-rooms, a restaurant and bar, an off-road vehicle race track (since closed), an RV Park, and a mobile home park. The Property also contains a gas station and market operated by commercial tenants. Najor has nearly daily contact with the residents and tenants at the Property.

5. In addition to the resort, I learned that a water company, known as Live Oak Springs Water Company, is also operated on the Property. At our initial meetings, Najor told me that Live Oak Springs Water Company was a separately owned business and was not pledged as collateral for the loan made by CNB and thus, in his opinion, was not part of the Receivership Estate. I later learned that this was false. Indeed, I later learned that the Debtor and Najor had successfully filed and prosecuted an action in the San Diego Superior Court against the County of San Diego on the grounds that the Debtor was a water company that was regulated by the California Public Utilities Commission ("Cal. PUC") and thus, exempt from the County's ground water regulations.

6. As part of my initial meeting and subsequent follow-up correspondence with Najor, I requested various books and records related to the Property. Najor informed me that receipts generated from the Property were deposited monthly into a bank account at U.S. Bank for Live Oak Enterprises, LLC ("Enterprises Account"), which I learned was a d.b.a. for the Debtor.

2

No. 13-13-11672-LT11

DECLARATION OF MATTHEW SEMMER IN SUPPORT OF MOTION TO EXCUSE TURNOVER BY STATE COURT RECEIVER AND FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

He also told me that there was a separate Wells Fargo Bank account maintained independently and exclusively for funds meant for the operation of and proceeds from Live Oak Springs Water Company. Based on follow-up discussions with Najor and further investigation by me, I confirmed, at the time, that this Wells Fargo Bank account was inactive and held a de minimus balance. I wrote a summary about my initial meeting with Najor, my follow-up interactions with him and my independent investigations in my Receiver's Initial Inventory and Report, which I filed in the Receivership Action on June 22, 2012. (See **Exhibit 1**.)

7. A few weeks after my initial meeting with Najor, I discovered that he had failed to disclose to me all assets of the Property and Receivership Estate. I discovered a Live Oak Holding, LLC bank account (as opposed to the Enterprise Account) at U.S. Bank ("Second Account"). When I confronted Najor about the Second Account, he told me that the Second Account was used exclusively by the water company. But in my review of the prior six months of bank statements for the Second Account, I discovered numerous non-water company related expenses that directly related to Najor personally or the operations of the Debtor's other businesses, including ATM withdrawals, transfers to the Enterprises Account, and expenses related to the off-road race track operated by Najor. From this, I determined that the Second Account was part of the Receivership Estate, and caused a portion of the monies in this account to be transferred to a receivership account. Respectful of the Cal. PUC's potential involvement, I left some funds in this account in order to satisfy any legitimate near-term expenses of the Live Oak Springs Water Company.

8. To clarify whether the Second Account and the water company was the property of the Debtor, and thus, the Receivership Estate, I requested that City National Bank, the Debtor, and Najor file pleadings in the Receivership Action as to their respective positions so the State Court could decide the issue. By an order entered on July 17, 2012, the State Court in the Receivership Action determined that income derived from the sale of water extracted from the

3

No. 13-13-11672-LT11

DECLARATION OF MATTHEW SEMMER IN SUPPORT OF MOTION TO EXCUSE TURNOVER BY STATE COURT RECEIVER AND FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

Property, the Second Account, and a legal judgment from the Debtor's action against the County were indeed property of the Debtor and of the Receivership Estate.

9. I, as Receiver, however, continued to refrain from operating the business of a water company. Najor continued to operate that business. However, on November 30, 2102, after further consideration, the State Court ruled that the water company and the Second Account would no longer be considered part of the Receivership Estate.

10. A complete summary of the incident regarding Najor's failure to disclose to me the existence of the Second Account and the personal and resort-related activity within the Second Account is included in my Receiver's Report #2, a true and correct copy of which is attached hereto as **Exhibit 2**.

11. Najor's failure to disclose the Second Account was not the only instance of his failure to disclose and/or deliver cash receipts to me as Receiver. In or around June and July 2012, I discovered that Najor had independently engaged a track operator (without revealing the receivership) and opened the off-road vehicle track without my consent as Receiver, even though I specifically instructed him that he was not to operate the track unless I approved its operations and had confirmed that there was appropriate insurance coverage. I also discovered that Najor had misappropriated gate receipts, *i.e.*, cash, totaling over $3,000.00 from the operation of the track which he failed to disclose and deliver to me as Receiver. This activity is also detailed in my Receiver's Report #2. Copies of my Receiver's Reports detailing the difficulties caused by Najor's improper actions are attached hereto as Exhibits 3 through 11.

12. Accounting for cash proceeds remains to be difficult. I have learned that shortly before this bankruptcy case was filed, the Debtor had sold numerous truck-loads of water to a subcontractor doing construction at a nearby project as part of a source-capacity test in which water is removed for a period of 10 days to measure the impact on supply. Based on direct observation of trucks by my agents and other parties onsite, past sales and valuations conveyed to me by Najor, and discussion with involved authorities, I believe the Debtor received (or

4

DECLARATION OF MATTHEW SEMMER IN SUPPORT OF MOTION TO EXCUSE TURNOVER BY STATE COURT RECEIVER AND FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

would have accounts receivables of) thousands and/or tens of thousands of dollars from such sale. It appears however, the bankruptcy schedules filed by the Debtor do not identify either the cash or the receivable.

13. I have been in communication with and cooperating with the Cal. PUC because the Debtor has been found to be in violation of California law and regulations concerning the regulation of water companies as public utilities because the assets and business operations of a water company may not be commingled with other businesses. As a result, and given the complexities of the non-water company elements of the property, I believe it is in the best interest of all of the creditors of the estate that a receivership be maintained for the non-water company operations and that a Chapter 11 Trustee be appointed who can operate the water company, arrange for a survey and separation of the legal parcels needed to operate the water company from the other businesses of the Debtor, and to bring the Debtor into compliance with state law.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that this declaration was executed on December 13, 2013, in San Diego, California.

*/s/ Matthew Semmer*

Matthew Semmer

5

No. 13-13-11672-LT11

DECLARATION OF MATTHEW SEMMER IN SUPPORT OF MOTION TO EXCUSE TURNOVER BY STATE COURT RECEIVER AND FOR THE APPOINTMENT OF A CHAPTER 11 TRUSTEE